Please all rise. Here he, here he is, Honorable Kelly Port from the 2nd Judicial District is now back in session. Honorable William C. Brennan is I. Please be seated. Your Honor, the second case on the docket this morning is Sue-21-0648, in which Mary Ann Brant, Petitioner-Appellee, and Judith Ann Brant, Respondent-Appellant. I'm going to bring the Appellant, Mr. Matthew Kaplan. I'm going to bring the Appellee, Mr. William Clemens. Mr. Kaplan, you may be seated. Good morning, Justices. My name is Matthew Kaplan. I represent Judith Ann Brant, the Appellant in this case, and the Respondent in the trial court. What's in a name? In this case, the name is all important. This case has one issue for you to decide. Are the payments made to Mr. Grant from the Fireman's Disability Pension Fund, in particular those payments made after he reaches retirement age, subject to his agreement and the judgment of dissolution provision to defy his pension, or do they continue, because of his prior disability, past his retirement age, to be considered disability in nature, to which payments Judith has made? Can you answer a question? Does Mr. Grant retire? Your Honor, he is, on the facts of the case, 67. And under the terms of the statute, retirement begins at 60, if not before. Well, it doesn't have to begin, though. Wouldn't that depend upon the plan? In other words, you could be 61 and elect not to retire and continue working. Is that not a possibility? Your Honor, I did not consider that, but he is receiving retirement benefits. That's in the undisputed facts of the case. At approval in 1997, Judith confirmed that it was her understanding that she would only receive a percentage of the pension upon his retirement. When and if there is a payment from the pension, correct? Correct. And the trial court, the divorce court judge in 1997, questioned both parties and made a comment that it was important that there be a discussion about the pension. In particular, the court said, there are some other things here with the pension that I want to bring to your attention that will probably need to be corrected or else you'll have problems in the future. And the judge asked both parties, you're fully satisfied, and both confirmed that they were with the language of the marriage settlement agreement. Honorable Justice Burkett, I believe that the judge's comments to the parties were expressed in handwritten interlineations in the ultimate judgment of dissolution of marriage, leaving no doubt as to the parties' intent. What's before you today is the characterization of payments he's making, he's receiving at this time. But the language was upon his retirement. Is there any clear evidence that he is fully retired? Only in the statute which provides, which distinguishes payments made prior to the age of 60 from payments made after the age of 60. And in the statute, in the disability pension statute, payments made after the age of 60 are unequivocally subject to an escalator. It's now 3%, so that it becomes equivalent in operation to pension payments made to firemen who were not disabled during their service years. There are no factual issues in the case. In the pleadings, the essential facts were pled and admitted by Mr. Grant in his response. My sharp-eyed friend, Mr. Douglas, says the lack of a stipulation mentioned in the final order is a problem, but it's not because my job is not to provide every detail. It's just to provide sufficient basis for the appellate court to resolve the case. And you have that in the pleadings. Do you agree that the trial court was required to follow this Court's decision in Belk? Absolutely. Pardon me? Absolutely. Yes. I do. I think the trial court reluctantly did that. And further, I can't comment on that. It is the Belk case itself, insofar as it addresses the characterization of post-retirement age payments, that is at issue before you, and that is that ruling that we challenge. The Belk court was correct when Officer Belk was 42 in denying and reversing the trial court in its award of half of Officer Belk's disability payment. That was a travesty. But the trial court, the Belk court, went overboard in saying, and when, if ever, Mr. Belk retires or achieves retirement age, he can choose to characterize his payments as continuing disability. That's the portion that's being challenged today. It was not necessary for the Belk court to state that. No one could tell whether Officer Belk and his ex-wife would survive to the point where the issue became, are these retirement payments? Clearly, these were disability payments up through the age of 60, and Mrs. Grant had made no claim to those prior payments made before Mr. Grant was 60. So the trial court, in essence, determined that Mr. Grant has been receiving disability benefits and that the marital sumo agreement applied only to age-related retirement payments. That was the trial court's determination, correct? I think the trial court's decision had to follow the Belk case in characterizing these as continuing disability payments, and it is that finding following the Belk case that is at issue before you today. You rely on Benson. Isn't Benson distinguishable? I mean, the order there was the result of a trial. That is a difference in the cases, but it doesn't substantially distinguish the cases on the issue of the characterization of post-retirement age payments. And in Benson, also in the record, there was a trial exhibit, a firefighter's pension plan description, which included references to both retirement and disability benefits. We don't have a copy of Countryside's plan in the record, do we? Of the plan, we do not. Why not? It's in the statute. The provisions of the plan are set forth clearly in the statute, and it is the statute that we rely ó it's on the statute that we rely that payments made after the retirement age of 60 are treated as retirement. To do otherwise would be to deprive Mrs. Grant of her bargain for benefit of the marital settlement agreement and the judgment. The Belk case is extreme and unsupportable in that, Justice Bowman said, unless Officer Belk then chooses to characterize these payments as retirement, he gets to keep the entirety of the payments. That allows him the opportunity to unilaterally choose whether he gets the windfall and whether the ex-wife gets her share. When you read Belk, what Justice Bowman was suggesting, he didn't say what a court would do if Belk tried that. That's the speculative problem with Belk. We can't speculate, and as you mentioned, we're not bound by Belk. This court can agree or disagree with Belk, but we're not bound by that decision. Right, and that's cause for celebration. Let me ask you this. Even if we were to agree with you that Judith should receive a portion of the disability benefits, why should she be entitled to restitution back to when he became age 60 when she didn't file his claim until he was 65? I believe that she had a right under the terms of the settlement agreement when Larry, when Lawrence entered age 60, that she was automatically entitled to her payments under the terms of the statute. But she didn't file until he was 65. She had a right under the judgment. She didn't have to file. It was just simply execution of the judgment, which was clear in its terms, except that Mr. Grant chose under the Belk decree to continue to regard these as disabilities. That's the issue before you. You believe that if this court disagrees with Belk and goes with your client, that he should pay restitution even though Belk allowed him to do what he did? Yes. I can't make any bones about that. To rule otherwise, I did not put this example in my brief because thinking obsessively about it since I filed my reply brief, I came up with an argument that I did not put in those. And that involves a comparison of Mr. Grant's financial situation to the situation of a firefighter who is identical to him in all respects, except he did not get disabled. This marriage settlement agreement was the product of several discussions, and the trial court was included in those discussions, correct? I was not there, but it was. That's what the record shows. Yes. And would you agree that, obviously, firefighters, like police officers, it's not unusual for an injury to occur and firefighters or police officers to become disabled? Correct. And at the time that this MSA was written, Belk had been the law in the 2nd District for five years. And not in three other districts, yes. Well, there was the law in the 2nd District. Yes. And that is likely why, I mean, just from reading this record, why the trial court paid particular attention and made sure that both parties read and understood the marriage settlement agreement, that there would not be a payment until Lawrence took his retirement pension. I run into my own limitations here. I don't have that insight. I just don't, as to the trial court's state of the mind. Well, there's a presumption that the trial court was aware of the law. And I agree to that, okay? As in many cases, though, involving pensions, even especially military pensions subject to U.S. law, in many cases people simply do not anticipate the disability disruption until it becomes a fact and has dire consequences, okay? Getting back to my example, if you compare Mr. Grant's situation with that of a retired fireman who was never disabled, the application of Belk here gives Mr. Grant a windfall, which the other fireman who was not disabled does not have. And it deprives Mrs. Grant of her bargained-for portion of the retirement. So you're raising a practical point. If he was to stay on a disability and saying that the MSA and the law didn't contemplate disability payments would be considered pension, he could forestall the payments of those forever. Absolutely. That's what Belk said. And Belk said, and he can choose if he wants. I think this is ludicrous. He can choose if he wants to denominate the payments as retirement. That leaves it up to him as to whether Mrs. Grant, in this case, gets her fair share. But does the marital settlement agreement, though, specify whether or not disability payments can ever be considered retirement benefits? It does not mention disability. There's a gap in the MSA, though, right? There was a gap. A gap there? Oh, there was an omission of any manifest consideration of disability. So were you alluding to some provision of law that would step in and resolve this? I can only refer to the pension disability enabling statute, which treats payments made after the age of 60. He can opt to treat them differently at 50, but mandatorily he gets an escalator exactly as pension payments enjoy after the age of 60. And the purpose, as stated in the other three appellate precedents that I cited. Do we know the nature of Lawrence's injury? I know it was a disability, but pretty do we know the nature of the injury? Well, I can tell you off the top of my head that he injured his knee, and then he went to work as an EMT. But I don't think that's significant, and I'll tell you why. Because the pension disability statute only applies to payments made out of that fund. And if, in fact, he has medical needs or he has some problem with mobility, there are other statutes, federal and state, that provide benefits for that. Any additional questions? I'm sure you'll have an opportunity for rebuttal. Thank you. Mr. Douglas. Thank you. Okay, may it please the Court, counsel? I want to follow up on one of your first questions to Mr. Kaplan, which you asked, is he retired? You asked just now, what was his injury? And he replied, he said it was to his knee, which I would say it was not. And that ties in with the first point that I made in my brief, in that because of the holes in the record, I think there's a little difficulty with the position they're trying to maintain here before this Court regarding what this Court should do. The record does provide that there were trial stipulations that were made a part of that record. That is part of the record that we know they were there. And the Court then made its findings based upon that. But what you do not have is what those stipulations contain. The trial court did not say a lot about what he was relying upon. So due to that hole in the record, I maintain that the opposing party has not given this Court enough of a record to make its findings. The fact that you asked those questions you asked, I think, speaks to that. So your position is you're questioning whether or not the record is sufficient for us to definitively rule in light of these gaps. Yes. And he is the appellant. So to the extent the appellant comes before this Court and asks that the trial judge be reversed, and here we are before this Court, and you're asking, quite rightly, is he retired? What is the nature of the injury? What are the underlying facts? To the extent you can ask those questions and you can't rely on actually either of us for an answer, you can't rely on me saying he's wrong about the need, which he is. But all you have is the record on appeal. That alone is a reason enough to affirm the trial judge. Well, can I ask just a question about that? One assumes that your position is that he's not retired because otherwise we wouldn't be here. Right. So the only other alternative is that he's disabled and receiving a disability pension. Is that a fair assumption? That is. There's no other possibilities? Right. Okay. If that's the case, can you discuss the interpretation of the pension code, and the argument is that it suggests that once you hit 60 and you're disabled, you're really retired for purposes of the code. Can you address that argument? Yes. So I apologize for that. I guess my response to that is to the extent you can receive, even though there could be a change if you're a firefighter, right, regarding whether pay is considered disability or considered retirement, that your rights flow from the judgment itself. So whether or not you would receive pay in either form. So looking at the judgment. And this judgment is a little interesting because this judgment has strikethroughs. So you can see the changes that were made, and I think that assists the court in ascertaining the intent of the parties. If you look at the judgment, it's in the record on page 55 of the common law record. It originally provided that payments would be made to the opposing party. The respondent will collect when he ceases employment or no longer chooses to remain in the pension program. Per the cases you see, per Bill, not trust so much, but Farrell, Davis, Benson, that maybe just barely argues more of their point. But that language was stricken, and that language was replaced with the fact that she would only have a right to the pension only to the extent it is received by the respondent if it is paid to him as a pension benefit. I grant you it doesn't say age-related. It doesn't say anything like that. But it also doesn't say disability. To the extent you see that change in the judgment from the prior form, which is more favorable to them, to the current form, which is more favorable to my client, that speaks as to the intent of the parties from the four corners of the agreement. And that speaks to, in answer to your question, now that I'm getting to it, that regardless as to whether or not the form of the payment of the pension code changes at that age, here, by this language, by the change, the parties clearly negotiated for this to be an age-related pension. In other words, the agreement didn't contemplate that disability payments would be considered the equivalent. Correct. Indeed, further, to the extent that you have the judgment, and this is in the case law, too, cited by both parties, to the extent you also have this settlement agreement speaking to the division per the formula in Marriage of Hunt. What does that apply to? Does that apply to disability benefits? No. That applies to age-related retirement benefits. But realistically, your argument will allow your client to collect disability payments until his death, which we hope is 20 or 30 years out, and never pay his ex-wife a dollar. It would. And you think that was the intent of the parties at the time of the MSA? The intent of the parties at the time of the MSA was to divide age-related retirement benefits. And as to the follow-up from what I think you're asking, to the extent that maybe now the opposing party feels that this is not to her liking. I think some of the language at the conclusion of Belk, where the Court says that they failed to make provision for disability benefits received by Owen, does not justify this Court in adding such a term to their agreement. Courts cannot rewrite contracts to suit either party, but must enforce the contract terms as written. But can courts take a practical look at what's happening with the pension code and recognize that disability payments after the age of retirement eligibility are in reality retirement benefits? That was somewhat referred to in a case relied upon by Benson. But, of course, there in Benson you had it, and I think, Your Honor, Justice Burkett spoke to that, where there you could look to a trial exhibit and say, okay, that trial exhibit relates to both disability and age-related pensions. But here, to circle back, and forgive me if I'm not answering the question, feel free to re-put it. I think the point is that I don't know if you answered Justice Brennan's question. Never mind. The point is that reality sits in. There is at some point in time, after age 60, retirement benefits, whether you call it disability or retirement benefit, those benefits are really supporting the lifestyle as a retiree. Yes and no. Because what you do have of record is you don't have, and it seemed like it was the concern in Benson that somebody is right there at the spot, opting to go one path versus the other, to deprive the other person of a benefit. Here you have in the record, in the response to their petition or amended petition, that the disability pay was received about a year after the judgment. So you do not have a fact where, well, I'll say two things about that. So you do not have a fact where somebody was at the age ready and able to receive retirement and steered one way versus the other to deprive another person of a benefit. To what little record there is, you know that's not true. But isn't that a red herring once we reach the point in time where somebody is older than 60? I get the analysis prior to 60, but after 60, it seems to me that that distinction isn't so critical. Well, to the extent the Court, this Court, is concerned about the deprivation of a benefit to the opposing party, I would refer to then other provisions in the judgment. And you see by other provisions in the judgment that the opposing party, it was intended the opposing party would be self-supporting. Unlike some of the cases, you do see a maintenance warrant. I'll grant you that. But that maintenance is very limited in amount and very limited in duration, 24 months. You see by this judgment, the opposing party was granted 60 percent of the marital estate. So what was intended by that, and that's following from the cases, I believe Bill looked at that in that way, is that with a disproportionate award, with a very, very limited maintenance, with actually a direction to the opposing party to be self-supporting. But there's nothing inconsistent with the direction to be self-supporting And an award that says you get quadro 20 years from now. Because that's a... But both can happen. You often do. I agree with that. Yeah, right, of course. But also a thread through the case law is if the Court is finding this language to be ambiguous, and I don't think you should, then you can look to the other provisions of the judgment to address your concern. Well, because to me, it's like the Court's concern is flowing from, is this person going to be left in a disadvantaged position? And I guess I would say the disabled person... Well, my concern is flowing from, is he really just retired? Okay. Is this money, it's not replacing his income. It's for his retirement. Well, not initially, though. No, but now... Right, right, right. But even if so, even if so, and I guess I would refer back to that statement in Belk that you can't rewrite the agreement regardless of which way it cuts. In theory, perhaps a disabled party would now seek to be a maintenance recipient. He cannot come back and revisit that. Perhaps he would ask that the burial estate not be divided disproportionately against him because of his current disability. He cannot revisit that. Similarly, perhaps he would wish to, given his age, to the extent you can tell from the record where he's entitled. If I can ask you a point of question. If we were to accede to the correctness of your position, wouldn't it be implicitly finding that the wife, the ex-wife, had agreed that he could forestall forever the payments as long as he is technically riding a disability? Is that what you would find that you would ever have agreed to? You would be finding that she did not negotiate or ask or agree to receive any form of the disability pay regardless of the result. For example, in a similar situation, let me say, you could have a party expressly waive maintenance and later be found in a disadvantaged position. And that does happen, of course, all the time. But in this case, and following from the threat of cases, she could have asked, but did not ask, to be awarded both retirement and disability pay. Why would she at that point in time? At some point in time he's going to retire. And implicit in the understanding of the marriage settlement agreement was at some point in time he's going to take retirement. It is implicit that at some point he was going to take retirement. Right. If and unless there's a disability. Right. Yeah. And the language involved, would you agree that Judith's position is that it's over addictive? I'm sorry, it's what? That it's over addictive. It was not necessary to the decision. It was just an add-on that really wasn't necessary. I guess I'm not going to agree to that. Well, we can look at the opinion and say it was not necessary because he wasn't approaching that age. But also, we're not bound by Belk. Not bound by Belk. That is true. However, I would note that to the extent that Belk and its reasoning are something I'm asking this Court to support, Belk was followed by Farrell in the first district, followed by Davis in the third district. And that's why I didn't quite understand his briefs, because the reasoning of Belk has been followed by other districts. So you would have to overrule your own decision in Belk. You would have to decline to follow Farrell of the first district. We can't overrule Belk. We can't disagree with Belk. Right. You would have to deviate away from Davis. Benson does not dictate a different result either. There's no case that actually dictates that their result be the result in this case. Belk, following Belk, it would support my client's position following Farrell. It would follow my client's position following Davis. It would support my client's position. All and often relating to the idea that when you have a settlement agreement, you negotiate for what you negotiate for, come what may in the future. And in this case, there was no negotiation or no request for disability pension. And as I said earlier, if anything, by the changes to the agreement, you can see that, if anything, they steered away from that. You mentioned before the split of the marital property, 60-40. This was not a huge estate, right? Correct? I would agree. I did look at it this morning. It did not appear to be a huge estate, but some of the cases I have looked to that to the extent that some of the cases say, okay, this kind of language, it's ambiguous, let's look outside of that one provision. Or if not, we won't. The courts have, in a case like this, in determining whether or not there should be an award of disability pay versus is it just retirement or age-related, looked at the circumstances of the case generally. And in this case, looking, if you were to find that this is ambiguous, I think you shouldn't. Looking outside of that one line item in the judgment, the fact that small or large as the estate may be, the fact that it was divided disproportionately, the fact that she received little to no maintenance, the fact that she was ordered to be self-supporting, speaks against the interpretation being offered by the opposing party. The argument about the application of Benson, you feel that we should not call Benson at all because it was a trial court judgment or because of the exhibit? Well, okay. So throughout, the courts have found that in reviewing the terms of either, in Belka it was a stipulation and a trial, and in other cases it was a settlement agreement, used contract rules to interpret what that language means. The main, main point in Benson is that the court, and the decision says so right at the head of it, that you cannot use that principle because you are reviewing the judgment of a trial court entered following a trial. And I have one more question, if I can. Can you address counsel's argument about the increase in disability that matches the pension benefit after age 60? I guess my answer to that is I don't concur that that is 100 percent clear from the statutes itself that could have been made part of the proofs at the decision or the hearing that yielded the decision as being the subject of appeal. And that, again, also is a problem with this Court's record that you have because you do not have that in support of their position, and you don't even have that in the record to answer your question. Thank you. Thank you. Mr. Kaplan. Thank you. To address the sufficiency of the record, you have the pleadings. The facts are uncontested. They were pled and admitted. It is not the appellant's job to provide all detail, duplicative or not. It is just the appellant's burden to provide a sufficient record on which the Court can rule, and you have that before you. Well, what about the stipulations? We don't have the stipulations. You don't need the stipulations. That was not filed. It was presented to the Court, not filed. It's an omission. Yet the salient facts of the case, the essential facts of the case, are stated in Judith Grant's second petition and confirmed, admitted, in the response to that petition. That provides a sufficient basis for you to rule. Again, I've noted that you have taken notice of the purposes of payments made during a disabled participant's working life as characterized by replacement of working income. As opposed to payments made after retirement age, which is to provide retirement income. There are no public policy arguments to support that payments made after retirement age could continue to be characterized as disability and thereby deprive Judith Grant of her share. There are public policy purposes, such as Section 502 of the Marriage and Dissolution of Marriage Act, encouraging parties to agree and incorporate their agreements into judgments, which become unenforceable under the provision of BELC. BELC vindicates greed. BELC was properly followed by other courts only as to the characterization of disability payments received before retirement age. That is my examination of the record. This case reminds me of Henry, the Marriage of Watson, a case decided by this Court previously this year. The site is 2022, Ill. F. 2nd, 219-137. That case was decided explicitly on the basis that empty form should not prevail over substance. Those are the arguments in this case. Thank you for your consideration. Thank you. Thanks to both sides for your arguments. We're going to take the matter under advisement, and a decision will be rendered in due course.